IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**OREGON REALTY COMPANY**,

    Plaintiff,

  v.

**GREENWICH INSURANCE COMPANY,**
a foreign corporation,

    Defendant.

_____

**GREENWICH INSURANCE COMPANY,**
a foreign corporation,

    Third-Party Plaintiff,

  v.

**SHARON BANKOFIER**, a citizen of Oregon,
and **DUANE BANKOFIER**, a citizen of Oregon,

    Third-Party Defendants.

No. 3:12-cv-00200-MO

OPINION AND ORDER

1 – OPINION AND ORDER

**MOSMAN, J.**,

Sharon and Duane Bankofier prevailed in this matter entitling them to reasonable attorney fees and costs. Their counsel seek $42,051.50 in attorney fees [39] pursuant to Or. Rev. Stat. § 742.061, Or. Rev. Stat. § 82.010, and Local Rule 54-3. Their counsel also seek $339.62 in costs [43] pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54-1. For the following reasons, I award plaintiff $18,064.55 in attorney fees and $101.88 in costs.

## BACKGROUND

A state court action was brought against the Bankofiers and Oregon Realty that arose out of the sale of real property and the subsequent investment of the sale proceeds in several tenants-in-common. After the state court lawsuit was filed, the Bankofiers and Oregon Realty brought this federal action seeking declaratory relief and asserting a claim for breach of contract against their insurer, Greenwich Insurance Company.

After hearing oral argument on the cross-motions for summary judgment, I concluded the allegations in the state court complaint included real estate services and neither Exclusion E nor J barred coverage. (Tr. [47] at 47–50.) Accordingly, I held that Greenwich Insurance had a duty to defend the Bankofiers, granted the Bankofiers' motion [15] for summary judgment as to Greenwich Insurance, and denied as moot their motion as to Oregon Realty. I also denied [38] Greenwich Insurance's motion [20] for summary judgment. Later, I granted [59] Oregon Realty's motion for summary judgment.

This opinion concerns only the Bankofiers' motion for attorney fees and costs. Their motion can be separated into two categories: (1) attorney fees and costs incurred defending the state court action; and (2) attorney fees and costs incurred in this federal action. This opinion only concerns the latter category. I resolved the first category in a prior opinion [59].

**DISCUSSION**

The Bankofiers' counsel seek attorney fees pursuant to Or. Rev. Stat. § 742.061 and asserts that several factors listed in Or. Rev. Stat. § 20.075 favor their requested award. Greenwich Insurance did not file a response to the Bankofiers' motion for attorney fees and, therefore, has not indicated any specific objections.

I.   **Attorney Fees**

    A.    *Basis of Fee Award*

        1.    **Standard**

In diversity cases, attorney fee awards are governed by state law. *Schumacher v. City of Portland*, 2008 WL 219603, at *2 (D. Or. Jan. 23, 2008). Or. Rev. Stat. § 742.061(1) provides, in relevant part:

> if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

This statute is intended to "encourage the settlement" of insurance claims and to "reimburse successful plaintiffs reasonably for moneys expended for attorneys fees in suits to enforce insurance contracts." *Chalmers v. Or. Auto. Ins. Co.*, 263 Or. 449, 452, 502 P.2d 1378, 1380 (1972). When the conditions enumerated in Or. Rev. Stat. § 742.061(1) are met, attorney fees must be awarded. *See Petersen v. Farmers Ins. Co. of Oregon*, 162 Or. App. 462, 466, 986 P.2d 659, 661 (1999).

        2.    **Analysis**

I find the conditions enumerated in Or. Rev. Stat. § 742.061 are met. The Bankofiers tendered defense of the state court action to Greenwich Insurance prior to February 23, 2011.

(Greenwich's Answer [4] ¶ 18, Ex. D.)  More than six months later, on January 28, 2013, the Court granted [37] summary judgment to the Bankofiers against Greenwich Insurance. Greenwich Insurance refused to defend the Bankofiers in the state court action and has not tendered any amount under the policy.  (Mem. Att'y Fees [40] at 4.)  It necessarily follows that the Bankofiers' recovery exceeds the amount of the tender made by the defendant, as no tender was made.  Accordingly, pursuant to Or. Rev. Stat. § 742.061, attorney fees must be awarded in this case.

      **B.**    *No Objections to Attorney Fees*

Even when the opposing party does not object to a motion for attorney fees, the district court has an independent duty to review the petition for reasonableness, and to give a "concise but clear explanation of its reasons for the fee award." *Cunningham v. Cnty of Los Angeles*, 879 F.2d 481, 484 (9th Cir.1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

      **C.**    *Or. Rev. Stat. § 20.075*

           **1.**    **Standard**

Subsection (1) of Or. Rev. Stat. § 20.075 lists the factors the Court must consider "in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees."  Here, the request for attorney fees is based on Or. Rev. Stat. § 742.061.  As I have found the conditions of the statute are met, the award pursuant to the statute is not discretionary.  *See Petersen*, 162 Or.App. at 466, 986 P.2d at 661.  Therefore, Or. Rev. Stat. § 20.075(1) does not apply to the analysis of *whether* to award attorney fees. *See id.*  It does, however, apply to my determination of the *amount* of an award of attorney fees.  *See* Or. Rev. Stat. § 20.075(2); *see*

*also McCormick & Schmick's Seafood Rest., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2011 WL 4625728 (D. Or. Sept. 30, 2011).

    The factors identified in subsection (1) are:

    (a)    The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

    (b)    The objective reasonableness of the claims and defenses asserted by the parties.

    (c)    The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

    (d)    The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

    (e)    The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

    (f)    The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

    (g)    The amount that the court has awarded as a prevailing party fee under ORS 20.190.

    (h)    Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1). Subsection (2) requires the Court to consider the following additional factors:

    (a)    The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

    (b)    The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

    (c)    The fee customarily charged in the locality for similar legal services.

    (d)    The amount involved in the controversy and the results obtained.

5 – OPINION AND ORDER

    (e)    The time limitations imposed by the client or the circumstances of the case.

    (f)    The nature and length of the attorney's professional relationship with the client.

    (g)    The experience, reputation and ability of the attorney performing the services.

    (h)    Whether the fee of the attorney is fixed or contingent.

*Id*. § 20.075(2).

When analyzing the factors under Or. Rev. Stat. § 20.075, the Court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 190–91, 957 P.2d 1200, 1208 (1998). But the Court "ordinarily has no obligation to make findings on statutory criteria that play no role in the Court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255, 295 P.3d 94, 106 (2012).

    **2.**    **Analysis**

        **a.**    **Or. Rev. Stat. § 20.075(1) Factors**

The Bankofiers do not point to any of the factors in subsection (1) of Or. Rev. Stat. § 20.075 to support their requested fees. Upon review of the list of factors, I find that they are neutral as to the amount of reasonable attorney fees.

        **b.**    **Or. Rev. Stat. § 20.075(2) Factors**

            **i.**    **The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.**

The Bankofiers assert that Or. Rev. Stat. § 20.075(2)(a) weighs in their favor, without significant elaboration. This case was representative of insurance contract disputes that I often hear. Although it was unexceptional, it was not easy. With that in mind, I find that this factor

weighs in the Bankofiers' attorneys' favor as they handled the difficulty of the questions well and possessed the skills needed to properly perform the legal services.

> ii. **The amount involved in the controversy and the results obtained.**

The Bankofiers also assert that Or. Rev. Stat. § 20.075(2)(d) weighs in their favor, and I agree. The Bankofiers sought declaratory relief and brought a breach of contract claim against Greenwich Insurance and prevailed at summary judgment. I held [59] that Greenwich Insurance is under a duty to defend the Bankofiers in the state court action and is liable for approximately $250,000 in defense costs already incurred defending the state court action.

> iii. **The fee customarily charged in the locality for similar legal services and the experience, reputation and ability of the attorney performing the services.**

The Bankofiers' attorneys assert that Or. Rev. Stat. § 20.075(2)(c)&(g) support their requested fee. Under these factors, I consider the fee customarily charged in the locality for similar legal services and the experience, reputation, and ability of the attorneys performing the services. I find that these factors greatly influence my determination of reasonable attorney fees.

The Bankofiers were represented by Lane Powell PC attorneys Janet K. Larsen, Matthew S. Kirkpatrick, and Darin Sands. Lisa Thomas, a senior paralegal, assisted. Together, they request $37,051.50 in fees based on 115.3 hours of work. (Larsen Decl. [41] ¶ 6.) Defendant did not object to the requested fees.

As a benchmark for comparing the attorneys' billing rates under subsection (2)(c) with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic Survey, adjusted for inflation between the date the survey was published and the date the legal services were performed. *See Bell v. Clackamas Cnty*, 341 F.3d 858, 868 (9th Cir. 2003); *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002). The most

7 – OPINION AND ORDER

recent OSB Economic Survey was published in 2012[1], and the average rate of inflation[2] from 2012 to 2013 is approximately 1%. The average rate provides an initial starting point. Ultimately, the rate may be adjusted to account for the other factors listed in Or. Rev. Stat. § 20.075, such as the experience, reputation, and ability of the attorney performing the services. Or. Rev. Stat. § 20.075(2)(g).

To determine the applicable average rate in the 2012 OSB Survey, I look to counsel's experience and practice area. Lane Powell PC is located in zip code 97204, which falls within the Portland region.

### 1. Hourly Rates for Attorneys

#### a. Ms. Larsen

Ms. Larsen served as lead counsel for the Bankofiers in this matter. She was admitted to the Oregon State Bar in 1995, and has litigated complex and general business matters including disputes involving securities, real property and real estate, trust management, fiduciary duties and matters involving securities, elder abuse, and trade practices. (Larsen Decl. [41] ¶ 3.) Her hourly rate was $405 per hour in 2012 and is $440 per hour in 2013. (*Id*. [41].)

According to the 2012 OSB Survey, for lawyers practicing in the Portland area with 16–20 years of experience, the average hourly rate of lawyers in private practice was $256 and the median hourly rate was $250. For this same category of lawyers, the 75th percentile hourly rate was $300 and the 95th percentile hourly rate was $380.

To support the reasonable her requested fee should be even higher than the 95th percentile hourly rate, Ms. Larsen asserts that attorneys with specialized knowledge in real estate law command a fee premium of approximately 17% in Portland. She calculates this fee premium

---

[1] The OSB Economic Survey is available at www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf
[2] The Consumer Price Index is available on the Bureau of Labor Statistics website at: http://www.bls.gov/cpi.

8 – OPINION AND ORDER

by comparing the average rate of $332 per hour charged by "real estate/land use/environmental law" attorneys with the average rate of $284 per hour of all private practice attorneys in Portland. (Mem Att'y Fees [40] at 6; OSB Survey at 29, 32.) She then applies this premium to the 2012 OSB Survey rates by year of admission using the 95th percentile, concluding that the rate she requests is below what is deemed reasonable.

I start with the average rate, not the 95th percentile rate. Although in some cases inflation rates are applied to the relevant average, I find it unnecessary here when determining the reasonable rate to apply to the hourly rates requested by the attorneys. The inflation rate between 2012 and 2013 is very low, and their requested rates are above the 95th percentile rates.

I am persuaded that Ms. Larsen's experience and ability involving complex matters similar to those at issue in this case warrant an upward adjustment. This upward adjustment is also supported by the apparent fee premium that "real estate/land use/environmental law" attorneys are able to command in Portland. But I am not persuaded that the adjustment should be so great that I apply the fee premium to the 95th percentile rate.

Upon consideration of the relevant factors in Or. Rev. Stat. § 20.075, as described above, I find that the 95th percentile hourly rate of $380 is the reasonable rate to apply to Ms. Larsen's fees. Therefore, Ms. Larsen is entitled to the reasonable hourly rate of $380 per hour for her work on this case.

Ms. Larsen claims she spent 23.6 hours on this case. However, this case involved the Bankofiers claims against Greenwich Insurance as well as their claims against Oregon Realty. Although occasionally I could determine from the billing records whether Ms. Larsen spent her time on the claims against Greenwich Insurance as opposed to the claim against Oregon Realty, often I could not. I find it reasonable to award fees only for time spent on the claims against

Greenwich Insurance. Because Bankofiers' counsel failed to provide me with a breakdown of their time in this way, I deduct 50% of the hours. Accordingly, I award $4,484.00 of the fees she requested after consideration of the relevant factors in Or. Rev. Stat. § 20.075.

    **b.**  **Mr. Kirkpatrick**

Mr. Kirkpatrick is a litigation associate. He was hired by Lane Powell PC in 2008 and has been admitted to practice for five years. (Larsen Decl. [41] ¶ 4; Mem. Att'y Fees [40] at 5.) His hourly rate was $300 per hour in 2012 and is $335 per hour in 2013. (Larsen Decl. [41].)

According to the 2012 OSB Survey, for lawyers practicing in the Portland area with 4–6 years of experience, the average hourly rate of lawyers in private practice was $210 and the median hourly rate was $218. For this same category of lawyers, the 75th percentile hourly rate was $250, and the 95th percentile hourly rate was $295.

Ms. Larsen asserts the same explanation to support Mr. Kirkpatrick's fee that she asserted to support her own, but his fee request does not state his practice areas. I am able to infer from Ms. Larsen's argument that the fee premium should apply if one practice area is real estate. Without more, I am not persuaded that his requested rates, both of which are above the 95th percentile rate, are reasonable. Applying the 17% fee premium to the average hourly rate results in an amount very close to the 75th percentile rate of $250 per hour.

Upon consideration of the relevant factors in Or. Rev. Stat. § 20.075, as described above, I find this rate appropriate. Therefore, Mr. Kirkpatrick is entitled to the reasonable hourly rate of $250 per hour for his work on this case.

Mr. Kirkpatrick claims he spent 77.2 hours on this case. For the reasons stated previously when analyzing this issue for Ms. Larsen's claimed fees, I deduct 50% of his hours. Accordingly, I award $9,650.00 in fees.

        **c.**      **Darin Sands**

Darin Sands is an associate with Lane Powell PC. His hourly rate is $365 per hour and he claims to have spent 4.4 hours on this case. (*Id*. [41] ¶ 6.) According to the billing records, he spent those hours working on the answer and counterclaim against Greenwich Insurance and the claim against Oregon Realty. (*Id*. [41] Ex. 1.) Spending 4.4 hours on those matters is reasonable, but Greenwich Insurance should not be responsible for the hours the attorneys spent working on the Bankofiers' case against Oregon Realty. Mr. Sands does not specifically indicate how many hours fall into that category. My review of the record shows that he clearly spent 30 minutes on the case against Oregon Realty and also spent less than two hours on March 5, 2012, working on the case against Oregon Realty. Therefore, I deduct two hours as unreasonable.

In addition, the record does not reflect Mr. Sands' years of experience, nor did it reflect his practice areas. Although I am under no obligation to do so, I determine that Mr. Sands was admitted to the Oregon State Bar in 2010. While he may well have been practicing for some time prior to that, on this record I credit him with three years of experience. According to the 2012 OSB Survey, the average hourly rate for lawyers practicing in the Portland area with 0–3 years of experience is $182 per hour. I find that rate is appropriate here. Accordingly, I award $436.80 of the fees he requested after consideration of the relevant factors in Or. Rev. Stat. § 20.075.

        **2.**      **Hourly rates for Paralegal**

An award of attorney fees in cases like this one can include paralegal fees. *See Sterling Sav. Bank v. Derek L. Brown & Assocs., Inc.*, 2013 WL 164424, at *4 (D. Or. Jan 15. 2013). Ms. Thomas has twenty years of experience as a paralegal and is a senior paralegal with Lane

11 – OPINION AND ORDER

Powell PC. (Larsen Decl. [41] ¶ 5; Mem. Att'y Fees [40] at 5.) Her hourly rate was $215 per hour in 2012 and is $235 per hour in 2013. (Larsen Decl. [41] ¶ 5.)

The OSB Survey does not include data on paralegal rates. Within this district, there has been some suggestion that paralegal rates should not exceed the average rate for a first-year associate. *See Prison Legal News v. Umatilla Cnty*, 2013 WL 2156471, *7 (D. Or. May 16, 2013); *Knowledge Learning Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 2011 WL 2133824, at *6 (D. Or. Apr. 19, 2011). This may often be true, but the suggestion loses force when, as here, the paralegal has twenty years of experience. Absent any objection, I find that Ms. Thomas is entitled to the reasonable hourly rate of $215, which is the rate she requested for her work in 2012.

Ms. Thomas claims she spent 10.1 hours on this case. For the reasons stated previously when analyzing this issue for Ms. Larsen's claimed fees, I deduct 50% of her hours. Accordingly, I award $1,085.75 of the fees she requested after consideration of the relevant factors in Or. Rev. Stat. § 20.075 as described above.

## II.     Fees on Fees Award

According to their initial fee petition, the Bankofiers' counsel also seek $5,000 in attorney fees for the preparation of their petition and accompanying documents. (Mem. Att'y Fees [40] at 3.) By the time they filed a reply to that petition, they indicated that they had incurred $4,816 in attorney fees. (Reply [48] at 4, n.3.) Generally, to determine the "proper amount of the fees-on-fees award," I apply "the same percentage of merits fees ultimately recovered." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 909 (9th Cir. 1995); *see also Knowledge Learning Corp.*, 2011 WL 2133824 at *7. "However, an inflated request for a

'fees-on-fees' award may be reduced to an amount deemed reasonable." *Rosenfeld v. DOJ*, 2012 WL 4933317, at *15 (N.D. Cal. 2012).

The Bankofiers' counsel here sought fees to account for 115.3 hours spent litigating the merits and received approximately 50% of this request. In contrast to the initial petition, however, this fee petition does not involve the claim against Oregon Realty. Therefore, a 50% deduction in time is not warranted for that reason. However, the Bankofiers' counsel did not provide a declaration detailing who worked on the fee petition and for what amount of time. On that scant record, it is difficult for me to determine whether the claimed fees are reasonable. I find an award of 50% of the amount claimed is warranted. The Bankofiers are entitled to $2,408 in fees reasonably spent in relation to this fee petition.

### III.  Prejudgment Interest

Invoking Or. Rev. Stat. § 82.010, the Bankofiers seek prejudgment interest on the amounts paid to their defense counsel in the federal lawsuit as of the dates they made those payments. (Mem. Att'y Fees [40] at 5.) Or. Rev. Stat. § 82.010[3] provides statutory authority for awarding prejudgment interest when a party has breached a duty to pay money. The Bankofiers argue that the interest is for "damages for breach of contract" which begins to run when "(1) the exact amount of damages is either ascertained or readily ascertainable; and (2) the time from which the interest runs is easily ascertained." *Cascade Corp. v. American Home Assur. Co.*, 206 Or. App. 1, 15, 135 P.3d 450, 459 (2006) (quoting *Krieg v. Union Pac. Land Res. Corp.*, 269 Or. 221, 234, 525 P.2d 48, 54 (1974)).

---

[3] Or. Rev. Stat. § 82.010(1) The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:
(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof.
    (b) Money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent.
(c) Money due or to become due where there is a contract to pay interest and no rate specified.

13 – OPINION AND ORDER

Or. Rev. Stat. § 82.010 is inapplicable to the reasonable attorney fees the Bankofiers' counsel seek in this federal action. They seek reasonable attorney fees based on a fee-shifting statute, Or. Rev. Stat. § 742.061, not for breach of contract. Therefore, I decline to award prejudgment interest here. [4]

**IV.**     **Costs**

Costs are generally awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. Fed. R. Civ. P. 54(d). Expenses that may be taxed as costs are enumerated in 28 U.S.C. § 1920. The court may not tax costs beyond those authorized by 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). "Courts, however, are free to construe the meaning and scope of the items enumerated as taxable costs in § 1920." *Frederick v. City of Portland*, 162 F.R.D. 139, 142 (D. Or. 1995) (citing *Aflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990)). The losing party incurs the burden of demonstrating why certain costs should not be awarded. *See Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). The court "need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

Additionally, the court retains discretion to refuse to tax costs in favor of a prevailing party. *See K-2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471, 476–77 (9th Cir. 1974). When the court exercises its discretion to deny costs, it must explain its reasons for doing so. *Save Our Valley*, 335 F.3d at 945.

---

[4] If the Bankofiers had sought prejudgment interest on the defense costs they incurred defending the state court action, my holding on this issue might have been different. However, I need not decide that issue as the Bankofiers explicitly sought "prejudgment interest on the amounts paid to their defense counsel in the Coverage Suit." (Mem. Att'y Fees [40] at 5.) The Coverage Suit is the federal action. (*Id.* [40] at 2.) The Real Estate Suit is the state action. (*Id.* [40].)

14 – OPINION AND ORDER

The Bankofiers are the prevailing party, and they seek $339.62 in costs. (Bill of Costs [43].) As a prevailing party, they are entitled to costs enumerated in 28 U.S.C. § 1920. The Bankofiers claim four categories of costs: fees and disbursements for printing, delivery charges, court document charges, and computer legal research. The costs incurred as fees and disbursements for printing expressly fits within 28 U.S.C. § 1920. Because those costs are recoverable pursuant to 28 U.S.C. § 1920, I award the Bankofiers $101.88.

The Bankofiers also request $27.50 for costs of "delivery charges" and $24.04 for costs of "court document charges." Section 1920 does not provide for an award of costs for delivery charges. *See Acumed LLC v. Stryker Corp.*, 2006 WL 3410152, at *5 (D. Or. Sept. 12, 2006). Nor does the statute provide for an award of costs for court document charges. In addition, the Bankofiers do not explain what the costs include or why they were incurred. Therefore, I decline to award these costs.

Finally, the Bankofiers seek $186.20 for costs of "computer legal research." Costs for computer legal research are not taxable costs, but may be considered part of the attorney fees. *See Quimby v. Dutch Mining, L.L.C.*, 2013 WL 663624, at *2 (D. Or. Jan. 25, 2013); *Lee v. Walters*, 2002 WL 31972186, at *1 (D. Or. Dec. 23, 2002). Therefore, I also decline to award computer legal research costs.

15 – OPINION AND ORDER

## CONCLUSION

The Bankofiers' Motion for Attorney Fees [39] is GRANTED IN PART, and their Bill of Costs [43] is GRANTED IN PART.  The Bankofiers shall recover $18,064.55 in attorney fees and $101.88 in costs, for a total of $18,166.43.

IT IS SO ORDERED.

DATED this   28th   day of June, 2013.

/s/ Michael W. Mosman____  
MICHAEL W. MOSMAN  
United States District Judge