IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**OREGON REALTY COMPANY**,

        Plaintiff,

   v.

**GREENWICH INSURANCE COMPANY,**
**a foreign corporation,**

        Defendant.

_____

**GREENWICH INSURANCE COMPANY,**
**a foreign corporation,**

        Third-Party Plaintiff,

   v.

**SHARON BANKOFIER, a citizen of Oregon,**
**and DUANE BANKOFIER, a citizen of Oregon,**

        Third-Party Defendants.

No. 3:12-cv-00200-MO

OPINION AND ORDER

1 – OPINION AND ORDER

**MOSMAN, J.**,

Sharon and Duane Bankofier prevailed in this matter, entitling them to reasonable attorney fees and costs. I issued an order [69] awarding the Bankofiers $18,064.55 in attorney fees pursuant to Or. Rev. Stat. sections 742.061 and 82.010 and Local Rule 54-3, out of $42,051.50 requested. The Bankofiers have filed a motion for reconsideration [79] of that order, as well as two supplemental motions [70, 82] for additional attorney fees.

## BACKGROUND

I set forth the facts and procedural history of this case in my earlier order [69] awarding attorney fees, and I will not recapitulate them here. I will recount the relevant background of each of the Bankofiers' motions as necessary below.

## DISCUSSION

### I.   Motion for Reconsideration

In my order [69] on the Bankofiers' initial motion for attorney fees [39], I awarded $18,064.55 in attorney fees and $101.88 in costs, for a total of $18,166.43. The Bankofiers had requested fees incurred in litigating both Greenwich Insurance Company's ("Greenwich") claims against them and the Bankofiers' crossclaims against Oregon Realty. I concluded that only the fees incurred in the claims involving Greenwich are recoverable. Because the Bankofiers' attorneys provided almost no data that would allow me to allocate their hours among the claims, I reduced most of the attorneys' hours by 50% before calculating fees. I reduced by 50% the fees they claimed to incur in preparing the fee petition based on similar deficiencies in accounting.

The Bankofiers ask me to reconsider my decision to withhold fees incurred in litigating the crossclaims against Oregon Realty. In the alternative, they ask me to award the full amount

requested in connection with the Greenwich claims, based on detailed billing data supplied for the first time with their motion for reconsideration.

### A.   *Standard*

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Evidence submitted with a motion for reconsideration does not become "newly discovered" merely because the movant failed to include it with the original motion. *Id.*

### B.   *Exclusion of Hours Spent on the Oregon Realty Claim*

The Bankofiers argue that they brought their crossclaims against Oregon Realty only because Greenwich brought them into the suit as third-party defendants. (Memo. In Support [80] at 4.) If they did not succeed in recovering fees from Greenwich, they argue, they would have been forced to fall back on Oregon Realty's contractual obligation to pay for the Bankofiers' defense in the state court matter. *Id.* Because Greenwich's third-party claim compelled the Bankofiers to assert crossclaims against Oregon Realty, then, the Bankofiers' expenses in litigating those crossclaims should be charged against Greenwich. *Id.*

This argument does not make out a reason to reconsider my order. The Bankofiers have not pointed me to any newly discovered evidence. They also have not argued that my decision resulted in clear error or a manifest injustice, or pointed to a change in the controlling law. I therefore decline to reconsider my decision not to award attorney fees to the Bankofiers in connection with their crossclaims against Oregon Realty.

Even if reconsideration were appropriate here, the Bankofiers still have not shown that they are entitled to fees on their claims against Oregon Realty. Or. Rev. Stat. section 742.061(1) provides for fees only in actions brought based on a "policy of insurance." The crossclaims against Oregon Realty are based on Oregon Realty's alleged breach of a contract with the Bankofiers, not an insurance policy. (Bankofiers' Answer, Counterclaims, and Crossclaims [8] at 12-13). Section 742.061(1) does not entitle the Bankofiers to recover attorney fees incurred in litigating their claims against Oregon Realty.

### C.    *Reduction of Hours Billed for Litigation by 50%*

The Bankofiers have provided here what they failed to supply in their original motion: a breakdown of the respective hours their attorneys spent on the crossclaims against Oregon Realty and the claims involving Greenwich. Lead counsel Janet Larsen reports that 9 percent of the time billed and 8 percent of the fees charged were incurred on the Oregon Realty claims. (Memo. in Support [80] at 5.) Had the Bankofiers provided this information initially, I likely would have granted a fees award reflecting these amounts, but I am disinclined to do so this late in the proceedings. The billing details are hardly newly discovered evidence; the calculations could have been done as easily in advance of the first petition as now. *See ACandS, Inc.*, 5 F.3d at 1263 (documents not "newly discovered evidence" because school district could have filed them with original submission). However, given the large difference between the amount by which I reduced the award and the amount of time actually spent on the Oregon Realty case, I am willing to increase the award to avoid injustice. Accordingly, I will reduce the hours billed by only 25% instead of 50%. The attorney fees award for litigating the claims involving Greenwich therefore becomes $23,266.43.

      **D.**    *Reduction of Hours Billed for Seeking Fees by 50%*

Here as well the Bankofiers have belatedly supplied what they should have provided in their original fee petition: a detailed breakdown of "who worked on the fee petition and for what amount of time." (Memo. in Support [80] at 6.) The Bankofiers' attorneys explained that they could not provide this information originally because the "bill for the work on the petition had not been generated." *Id.* Be that as it may, it was the Bankofiers' burden initially to provide the information necessary to allow the court to calculate a reasonable fees award. The billing data does not become newly discovered evidence just because the Bankofiers' attorneys filed their motion before compiling it. *See ACandS*, 5 F.3d at 1263. I will not disturb my original award of fees incurred in preparing the fee petition: it remains $2,408. (Opinion and Order [69] at 13.)

      The total fees award for the Bankofiers' first fee petition therefore becomes $25,674.43. Including $101.88 in costs, the grand total becomes $25,776.31, instead of the original $18,166.43. (Opinion and Order [69] at 16.)

**II.**    <u>Supplemental Motions for Attorney Fees</u>

      The Bankofiers filed a supplemental motion for attorney fees [70] on July 1, 2013, one business day after I granted in part their original fee petition. On July 24, 2013, I issued a minute order granting the supplemental motion in part, without setting forth the amount of the fees award. Earlier that day, I ordered Ms. Larsen to submit a second, final supplemental motion for fees incurred and not accounted for in the previous petitions. (Transcript of Proceedings [84] at 16.) Below, I set forth the amount of fees to be awarded on the first supplemental motion and my ruling on the second supplemental motion.

A.    *First Supplemental Motion for Fees*

The Bankofiers' first supplemental motion covers attorney fees incurred between February 1, 2013, and May 30, 2013. During this period, their attorneys billed 33.6 hours in seeking attorney fees and 20.9 hours in enforcing my judgment in their favor. In addition to Ms. Larsen, paralegal Lisa Thomas and associate Cozette Tran-Caffee contributed to these totals.

1.    **Reasonable Hourly Rates**

I have already calculated reasonable hourly rates for Ms. Larsen and Ms. Thomas. (Opinion and Order [69] at 9, 12.) Those rates are $380 and $215 per hour, respectively. *Id.* I will continue to rely on them here.

I have not yet calculated a reasonable hourly rate for Ms. Tran-Caffee. Or. Rev. Stat. section 20.075(2) directs me to consider a number of factors in calculating the amount of an attorney fee award. I noted in my previous order that factors (a) and (d) (briefly summarized, the difficulty of the proceeding and the results obtained) weigh in the Bankofiers' favor. (Opinion and Order [69] at 6–7.) In calculating Ms. Tran-Caffee's reasonable fee, then, I will rely on factors (c) and (g): "[t]he fee customarily charged in the locality for similar legal services," and "[t]he experience, reputation and ability of the attorney performing the services." In applying these factors, as in my previous decision, I will rely on the 2012 Oregon State Bar Survey ("2012 OSB Survey"). Admitted to the Oregon Bar in 2012, Ms. Tran-Caffee was hired by Ms. Larsen's firm in the same year. The 2012 OSB Survey reveals an average hourly rate of $182 per hour for Portland-area attorneys with zero to three years' experience. Ms. Larsen does not argue that any real-estate premium should apply to Ms. Tran-Caffee, and in any event I do not believe that preparation of fee petitions or civil contempt motions requires skills specific to real-estate practice. I will apply the average rate of $182 per hour to Ms. Tran-Caffee's hours.

### 2. Fees Incurred in Seeking Fees

The Bankofiers claim a total of $10,360 for their efforts to collect fees from Greenwich through May 30. (Ms. Larsen's Decl. [71] at ¶ 6.) Of this total, they have already demanded $4,816 in their original motion for attorney fees. *Id.* at ¶ 8. The supplemental petition thus seeks $5,544 for fee-pursuing efforts. *Id.*

For several reasons, I am disinclined to award this entire amount. First, the Bankofiers' attorneys have not indicated how many of their hours were spent on preparing the original fee petition and how many were spent on this supplemental motion. This omission makes determining a reasonable award needlessly arduous. Second, preparing this supplemental fee request should not have been a difficult task, particularly as it simply reiterated the arguments made in the original petition. *See* Or. Rev. Stat. § 20.075(2)(a) (directing the court to consider "difficulty of the questions involved"). Third, the amount the attorneys request is based in part on hourly rates that I have already rejected as unreasonable. (*See* Ms. Larsen's Decl. [71] at ¶ 6 (stating hourly rates for Ms. Larsen, Ms. Tran-Caffee, and Ms. Thomas of $440, $280, and $230, respectively.)

Rather than attempt to allocate the attorneys' hours among the original fee petition and the supplement motion, then, I will simply reduce the amount the Bankofiers request by 50%. Pursuant to their first supplemental motion, they shall recover $2,772 for their attorneys' efforts to pursue fees.

### 3. Fees Incurred in Seeking to Enforce the Judgment

Greenwich argues that the Bankofiers should recover no fees for their efforts to enforce the judgment. (Opposition [75] at 4.) It observes that the Bankofiers attempted to enforce the judgment through a motion for civil contempt, not the means prescribed for enforcing a money

judgment under Fed. R. Civ. P. 69(a)(1).  *Id.* at 3.  However, the judgment [59] that finally disposed of the claims in this case comprises not merely an award of money, but also a declaration that Greenwich owes the Bankofiers a duty to defend them in the state lawsuit.  Civil contempt is an appropriate avenue for pursuing any alleged failure to discharge this duty.

Greenwich also argued, when the civil contempt motion was still pending, that the Bankofiers should not recover any fees if they do not prevail on the motion (in fact, I ultimately denied it).  However, the Bankofiers need not succeed in their efforts to enforce the judgment they obtained in order to recover the fees incurred.  All that is necessary is that the requirements of Or. Rev. Stat. section 742.061 are satisfied, and that those efforts are expended on "the action and any appeal thereon."  The Bankofiers' attorneys' efforts to enforce the judgment are part of the action, and the Bankofiers are entitled to recover for those efforts.

The Bankofiers assert a total of 20.9 hours in enforcing the judgment: 12.8 for Ms. Larsen and 8.1 for Ms. Tran-Caffee.  Considering the section 20.075(2) factors, I find this amount of time reasonable.  Applying the hourly rates above yields $4,864 for Ms. Larsen and $1,474.20 for Ms. Tran-Caffee, for a total of $6,338.20.  The Bankofiers shall be awarded this amount.

In total, the Bankofiers are entitled to a fees award of $9,110.20 pursuant to their first supplemental motion.

**B.**     *Second Supplemental Motion for Fees*

The Bankofiers' second supplemental motion covers fees incurred from June 1, 2013, to July 31, 2013.  The motion reports 50.5 hours spent on the Bankofiers' motion for civil contempt, 37.9 hours responding to Greenwich's motion for a stay pending appeal, 45.0 hours on supplemental fee petitions, 26.8 hours on the motion for reconsideration, and 33.2 hours

8 – OPINION AND ORDER

preparing for a hearing. Contributing to this total are Ms. Larsen, Ms. Tran-Caffee, Ms. Thomas, and attorney Thomas Sondag.

### 1. Reasonable Hourly Rates

I have calculated reasonable hourly rates for Ms. Larsen and Ms. Thomas in my previous order, of $380 and $215 per hour. (Opinion and Order [69] at 9, 12.) Above, based upon factors (c) and (g) in Or. Rev. Stat. section 20.075(2), I calculated a reasonable hourly rate of $182 per hour for Ms. Tran-Caffee. I will now apply the same factors to Mr. Sondag. An attorney with 29 years of experience, Mr. Sondag chairs Lane Powell's Portland litigation practice group. His standard rate is $545 per hour, but he has requested only $490 per hour in this case. According to the 2012 OSB Survey, a rate of $470 per hour for attorneys with twenty-one to thirty years of experience is at the 95th percentile, as is a rate of $500 per hour for thirty years of experience or more. The rate Mr. Sondag requests is comfortably within this range. I conclude that $490 per hour is a reasonably hourly rate for Mr. Sondag.

### 2. Fees Incurred in the Contempt Motion

The Bankofiers' attorneys claim to have spent 31.9 hours in June and 18.6 hours in July on their motion for civil contempt, amounting to 50.5 hours total. This is presumably in addition to the 20.9 hours the attorneys reported spending on efforts to enforce the judgment in the first supplemental motion. Given the complexity of the issues raised by the motion, *see* Or. Rev. Stat. § 20.075(2)(a), I am willing to accept that 50 hours is a reasonable amount of time to spend on them, but not more. Because I have already awarded fees for the first 20.9 hours above, here I will award fees for 29.1 hours pursuant to the second supplemental motion. To achieve this result, I will reduce each attorneys' hours pro rata. According to Ms. Larsen's declaration, Ms. Larsen, Mr. Sondag, and Ms. Tran-Caffee spent 12.7, 16.6, and 21.2 hours on the contempt

motion, respectively. (Ms. Larsen's Decl. [83] at ¶ 11.) Adjusted, these figures become 7.3 hours for Ms. Larsen, 9.6 hours for Mr. Sondag, and 12.2 hours for Ms. Tran-Caffee. Applying the hourly rates above, the attorneys incurred reasonable fees of $2,774, $4,704, and $2,220.40, respectively, for a total of $9,698.40.

### 3. Fees Incurred in Greenwich's Motion for Stay Pending Appeal

Greenwich argues that the Bankofiers should recover no fees on the motion for stay. I granted the motion, they argue, and the Bankofiers therefore did not prevail. However, having satisfied the requirements of Or. Rev. Stat. section 742.061(1), the Bankofiers are entitled to recover fees throughout the action and appeal. They need not succeed on a motion to recover fees incurred in responding to it.

The Bankofiers' attorneys have claimed to incur a substantial number of hours to prepare for a fairly straightforward motion. However, Greenwich's nearly four-month delay between filing a notice of appeal and moving for a stay[1] may have complicated the attorneys' preparations. I therefore credit the Bankofiers' 37.9-hour figure as reasonable. Ms. Larsen, Mr. Sondag, and Ms. Tran-Caffee contributed to this total, at 3.7, 9.0, and 25.2 hours, respectively. This leads to fees of $1,406, $4,410, and $4,586.40, for a total of $10,402.40.

### 4. Fees Incurred in Preparing Supplemental Fee Petitions

According to Ms. Larsen's declaration, the Bankofiers' attorneys spent a total of 45.0 hours preparing the first and second supplemental fee petitions. (Ms. Larsen's Decl. [83] at 11, 13.) Under Or. Rev. Stat. section 20.075(2)(a) ("difficulty of the questions involved"), this figure is unreasonable. The attorneys report spending 33.6 hours preparing the initial fee petition. (Ms. Larsen's Decl. [71] at ¶ 8.) The supplemental petitions, which present no new

---

[1] Greenwich filed its notice of appeal on February 22, 2013, and its motion for a stay pending appeal on June 14, 2013.

arguments, should not have required 22.5 hours each. Moreover, Ms. Larsen's declaration did not apportion the hours reported among the first and second supplemental petitions. I will therefore reduce each attorney's hours by 50%. Ms. Larsen's 5.8 hours becomes 2.9 hours, Mr. Sondag's 4.1 hours becomes 2.1 hours, and Ms. Tran-Caffee's 35.1 hours becomes 17.6 hours. Their respective fees amount to $1,102, $1,209, and $3,203.20, for a total of $5,334.20.

### 5. Fees Incurred in Preparing a Motion for Reconsideration

The Bankofiers' attorneys claim to have spent 26.8 hours on the motion for reconsideration of my order on their initial fees petition. (Ms. Larsen's Decl. [83] at 11.) My reasons for finding excessive the amount of time spent on the supplemental fee petitions apply here as well. Rather than raise new matter, the motion for reconsideration either reiterated arguments raised in the original petition or presented evidence that should have been submitted initially. I will therefore reduce the attorneys' hours on this motion by 50% as well. Ms. Larsen's 3.4 hours becomes 1.7 hours, Mr. Sondag's 5.5 hours becomes 2.8 hours, and Ms. Tran-Caffee's 17.9 hours becomes 9.0 hours. Their respective fees are $646, $1,372, and $1,638, for a total of $3,656.

### 6. Fees Incurred in Preparing for Hearings

Ms. Larsen's declaration recites that the attorneys spent a total of 33.2 hours preparing for the hearing on the motion for civil contempt, the motion for a stay, and the supplemental fee petitions. (Ms. Larsen's Decl. [83] at ¶ 11.) Ms. Larsen, Mr. Sondag, and Ms. Tran-Caffee contributed to this preparation. *Id.* Ms. Larsen has elsewhere expounded on all three lawyers' skill and experience to justify the hourly rates she asserted. (*Id.* at ¶¶ 7–9; Ms. Larsen's Decl. [71] at ¶ 3.) Given their abilities, and given the amount of time they reported spending in briefing these matters, I find unreasonable their claim to have needed another 33.2 hours to

11 – OPINION AND ORDER

prepare for the hearing.  *See* Or. Rev. Stat. § 20.075(2)(a), (g).  As I have done above, then, I will reduce the attorneys' reported hours by 50%.  Ms. Larsen's 19.1 hours becomes 9.6 hours, Mr. Sondag's 1.0 hours becomes 0.5 hours, and Ms. Tran-Caffee's 11.3 hours becomes 5.7 hours.  I leave Ms. Thomas's 1.8 hours untouched.  The fees are $3,648, $245, $1,037.40, and $387, respectively, for a total of $5,317.40.

## CONCLUSION

The Bankofiers' Motion for Reconsideration [79] is GRANTED IN PART.  My order of June 28, 2013 [69] shall be amended to state a total award of $25,776.31, rather than $18,166.43.  Pursuant to their first Supplemental Motion for Attorney Fees, which I granted in part on July 24, 2013, the Bankofiers shall be awarded $9,110.20.  The Bankofiers' Second Supplemental Motion for Attorney Fees [82] is GRANTED IN PART.  The Bankofiers shall recover $34,408.40.

IT IS SO ORDERED.

DATED this   11th   day of September, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge